**HOWARD**

v.

**OHIO DEPARTMENT OF TRANSPORTATION.** ▪

Court of Claims of Ohio.

No. 95–10025.

Decided Dec. 2, 1997.

*Randolph H. Freking,* for plaintiff,

*Betty D. Montgomery,* Attorney General, and *Rosa P. Wright,* Assistant Attorney General, for defendant.

RUSSELL LEACH, Judge.

The court conducted a bifurcated trial to determine whether defendant, the Ohio Department of Transportation, unfairly discriminated against plaintiff, Todd Howard, regarding his vision difficulty as it pertained to his position as a "survey technician I" (technician I) at ODOT's District 8 office located in Monroe, Ohio.

Plaintiff started his employment with defendant as a temporary worker in March 1991. In July 1991, plaintiff was permanently hired as a service attendant at defendant's District 8 garage. Thereafter, plaintiff applied for, and was promoted to, a technician I position on April 19, 1992. As a technician I, plaintiff assisted senior field surveyors with such tasks as operating measuring devices, clearing brush with machetes and axes, taking field notes, flagging traffic, and driving vehicles. Defendant divided its field surveyors into three-member teams consisting of a crew chief, an instrument man, and a technician I. Although some

driving was required, the description for the technician I position did not specifically require a valid Ohio driver's license.

Approximately nine months later, on January 13, 1993, plaintiff verbally requested of his manager, Dennis Blevins, that he be relieved of driving the survey van because of his deteriorating vision. Despite his request to be relieved of driving defendant's van, plaintiff maintained a valid Ohio driver's license and continued to drive himself to work.

Thereafter, on April 13, 1993, plaintiff provided defendant with a doctor's excuse stating that he was unable to drive because he had less than twenty degrees side vision. Blevins informed plaintiff that he would discuss his request with Carl Best, the District 8 Labor Relations Officer. At no time after April 13, 1993, was plaintiff required to drive the survey van.

Defendant's agents testified that during this same period, numerous employees were disgruntled over driving duties among the survey teams. As a result of this disgruntlement, defendant, on May 25, 1993, amended the technician I position description to require a valid Ohio driver's license. Furthermore, defendant also made driving the survey van a job duty. Having been relieved of driving the survey van and flagging traffic, plaintiff filed a "Request for Reasonable Accommodation" on June 18, 1993, pursuant to the Americans with Disabilities Act ("ADA"). On August 3, 1993, defendant corresponded with plaintiff's physician, Dr. Edward Thomas, regarding plaintiff's vision difficulties. In its correspondence, defendant requested Dr. Thomas to complete a checklist showing eleven essential and repetitive technician I duties. Dr. Thomas indicated on the checklist that plaintiff was unable to assist in flagging traffic and driving the survey van. Upon receiving Dr. Thomas's completed checklist, defendant scheduled plaintiff for an independent medical examination with Dr. John Bullock for November 23, 1993.

On November 9, 1993, plaintiff filed a "charge of discrimination," with an attached affidavit, alleging that Blevins had harassed him in front of co-workers and, because of his disability, had threatened to remove him from his position. As a result of plaintiff's charge, Gary Ketron, Deputy Director and Equal Employment Officer ("EEO") for District 8, investigated plaintiff's charge. Upon interviewing co-workers, Ketron found plaintiff's charges unsubstantiated and without merit.

Thereafter, on November 23, 1993, plaintiff was examined by Dr. Bullock, who submitted his findings to defendant on November 29, 1993, stating, in part, that plaintiff suffered from bilateral cataracts and retinitis pigmentosa and that plaintiff was unable to have a commercial driver's license. However, Dr. Bullock indicated that further testing was necessary to fully quantify the scope of plaintiff's visual disability.

Plaintiff continued to work as a technician I with driving and flagging accommodations. Unfortunately, plaintiff was hospitalized on December 8, 1993, after he suffered a panic attack. As a result of his hospitalization, plaintiff was placed on sick leave until February 22, 1994, at which time he attempted to return to work. Although he was issued a doctor's release regarding his panic attack, plaintiff was not allowed to return to work. Rather, he was placed on indefinite administrative leave with pay because defendant was concerned about plaintiff's ability to safely perform the technician I duties. Thereafter, on February 28, 1994, defendant scheduled plaintiff for a second examination with Dr. Bullock for March 8, 1994.

On March 1, 1994, plaintiff filed a grievance, claiming that defendant had harassed and discriminated against him because of his visual disability. Furthermore, he claimed that despite his doctor's release, he was denied the right to report back to work on February 22, 1994. Thereafter, plaintiff's grievance was heard at both the level two and level three grievance hearings, which found that plaintiff had not been adversely affected by defendant's conduct. Shortly thereafter, on March 17, 1994, plaintiff suffered a second panic attack and was again hospitalized. Thereafter, pursuant to his request, plaintiff was removed from administrative leave and placed on disability leave.

On April 26, 1994, Dr. Bullock submitted his findings from his second medical examination in which he confirmed that plaintiff suffered from retinitis pigmentosa and cataracts. Dr. Bullock also completed the same "essential and repetitive duties" checklist provided to Dr. Thomas. On the checklist, Dr. Bullock indicated that plaintiff's vision difficulty prevented him not only from driving and flagging traffic, but also from working in and around heavy equipment and uneven terrain.

As a result of his second panic attack, plaintiff remained on disability leave until December 22, 1994, at which time he contacted Carl Best about the prospect of returning to work. As a result of the conversation, both agreed to meet at the District 8 office the next morning. During the meeting, plaintiff presented Best with a doctor's release regarding his panic and stress disorder. Plaintiff also inquired as to whether defendant would provide severance pay if plaintiff were to voluntarily resign from his employment. Upon defendant's refusal to offer severance pay, plaintiff voluntarily resigned his position by signing a "resignation/separation" form. However, five days later, on December 28, 1994, plaintiff wrote defendant a letter rescinding his resignation, claiming that he had been unfairly terminated. Defendant did not accept plaintiff's rescission.

During his tenure as a technician I, plaintiff received three performance evaluations: two during his probationary period in 1992 and a third in 1993. In all but the third evaluation, plaintiff received either a "meets expectations" or an

"above expectations." However, on his third evaluation, plaintiff received one "below expectations" for being unable to operate the survey van.

In his complaint, plaintiff alleges that defendant violated the ADA, Section 12101 *et seq.*, Title 42, U.S.Code, and R.C. Chapter 4112, by (1) changing the technician I position description to include job duties and requirements that defendant knew plaintiff would be unable to perform, (2) refusing to grant plaintiff a reasonable accommodation for his disability, (3) harassing and intimidating plaintiff regarding his disability, and (4) coercing plaintiff into resigning rather than granting his request for a reasonable accommodation. Additionally, plaintiff alleges that defendant retaliated against him for filing a disability discrimination charge by (1) failing to make a final decision regarding a reasonable accommodation, (2) giving him an unsatisfactory employment evaluation, and (3) not allowing him to return to work in February 1993 or December 1994.

▇ The court finds that defendant is a "covered entity" that clearly falls under the purview of both the ADA and R.C. Chapter 4112. According to Section 12112(a), Title 42, U.S.Code, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to * * * discharge of employees, * * * and other terms, conditions, and privileges of employment." Also, R.C. 4112.02 states, "It shall be an unlawful discriminatory practice: for any employer, because of the * * * handicap * * * of any person, to discharge without just cause, * * * or otherwise discriminate against that person with respect to * * * conditions, or privileges of employment, or any matter directly or indirectly elated to employment." Therefore, the sole issue before the court is to determine whether defendant unfairly discriminated against plaintiff based upon his vision impairment.

▇ The court finds that pursuant to both the ADA and R.C. Chapter 4112, plaintiff's vision impairment clearly constituted a disability, and a handicap, respectively. See Section 12102(2), Title 42, U.S.Code, and R.C. 4112.01(A)(13).

▇ Upon review of the evidence and the arguments of counsel, and for the reasons set forth below, the court finds that in regard to his vision impairment plaintiff failed to prove by a preponderance of the evidence that defendant discriminated against him. Although defendant changed the technician I position description to require a driver's license and driving responsibilities, the court finds that such a change did not affect plaintiff's employment because he had a valid driver's license and had already received a reasonable accommodation relieving him from driving as of April 13, 1993.

▇ The court also finds that defendant's February 22, 1994 placement of plaintiff on administrative leave with pay until the conclusion of Dr. Bullock's second medical examination was reasonable under the circumstances and does not

constitute intimidation, harassment, or discriminatory conduct. The court finds that defendant, confronted with conflicting information surrounding plaintiff's disability, was justifiably concerned about the true nature of plaintiff's disability. For example, after receiving a reasonable accommodation relieving him from driving the survey van, plaintiff continued to drive himself to work. As of April 26, 1994, Dr. Bullock indicated that plaintiff was unable to perform four of the eleven essential and repetitive technician I duties, including assisting in traffic control, driving the survey van, working in and around construction equipment, and working on or around uneven terrain.

Finally, the court finds that defendant's denial of plaintiff's request to return to work in February 1994 was reasonable under the circumstances. The court reiterates its finding, set forth above, that defendant had justifiable concerns regarding the nature and scope of plaintiff's disability and adds that defendant also had safety concerns to consider. The court finds that defendant acted reasonably when it placed plaintiff on administrative leave with pay until Dr. Bullock issued his findings from plaintiff's second examination. The court finds that plaintiff's placement on administrative leave and eventual disability leave does not constitute discriminatory conduct.

The court also finds that plaintiff failed to prove by a preponderance of the evidence that defendant, or its employees, intimidated and/or harassed plaintiff. The trial testimony of defendant's employees convinces this court that plaintiff was, in fact, subjected to jokes; however, the court finds that plaintiff voluntarily participated in such dialogue.

The court also finds that plaintiff failed to prove by a preponderance of the evidence that defendant coerced him into resigning. Rather, the court finds that plaintiff voluntarily tendered his resignation after attempts to obtain severance money failed.

The court also finds that plaintiff failed to prove by a preponderance of the evidence that defendant, or its employees, retaliated against him because he had filed a discrimination charge. The trial record is devoid of evidence that any adverse or retaliatory actions were taken against plaintiff in response to his filing such charges. Although defendant noted on plaintiff's evaluation his inability to operate the survey van, the court finds that such conduct, standing alone, does not constitute harassment or intimidation, not to mention discriminatory conduct.

*Judgment for defendant.*

RUSSELL LEACH, J., retired, of the Franklin County Municipal Court, sitting by assignment.